# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | |
|---|---|
| MOBILE HEALTH INNOVATIVE SOLUTIONS, LLC, <br><br> Plaintiff, <br><br> v. <br><br> APPLE INC., <br><br> Defendant. | Civil Action No. 2:24-cv-14-JRG <br><br> **JURY TRIAL DEMANDED** <br><br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT APPLE INC.'S MOTION TO DISMISS PURSUANT TO FEDERAL RULE OF CIVIL PROCEDURE 12(B)(3) OR TO DISMISS PURSUANT TO <u>FEDERAL RULE OF CIVIL PROCEDURE 12(B)(6)</u>**

**TABLE OF CONTENTS**

Page

I.  INTRODUCTION ...........................................................................................................1

II.  STATEMENT OF ISSUES TO BE DECIDED BY THE COURT ...................................2

III.  BACKGROUND ...........................................................................................................2

    A.  The Parties .........................................................................................................2

    B.  The Technology ..................................................................................................3

    C.  The Complaint ....................................................................................................5

IV.  ARGUMENT ................................................................................................................6

    A.  The Court Should Dismiss This Suit Because Venue Is Not Proper In The Eastern District Of Texas...........................................................................................6

    B.  The Court Should Also Dismiss This Suit Because The '984 Patent Claims Nothing More Than The Unpatentable Abstract Idea Of Determining The Stress Level Of An Individual From Generic Biometric Data. ......................................................10

        1.  The '984 Patent Is Directed To An Abstract Idea....................................10

        2.  The '984 Patent Does Not Include An Inventive Concept. ......................15

    C.  The Court Should Also Dismiss This Suit Because The Complaint Fails To State A Claim For Direct Or Indirect Infringement...........................................................19

V.  CONCLUSION.............................................................................................................21

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Alice Corp. Pty. Ltd. v. CLS Bank International*,
 573 U.S. 208 (2014).................................................................................... *passim*

*In re Apple Inc.*,
 No. 21-181, 2021 WL 5291804 (Fed. Cir. Nov. 15, 2021) ....................................9

*In re Apple Inc.*,
 No. 22-128, 2022 WL 1196768 (Fed. Cir. Apr. 22, 2022) ....................................9

*In re Apple, Inc.*,
 581 F. App'x 886 (Fed. Cir. 2014) ....................................................................3

*Berkheimer v. HP Inc.*,
 881 F.3d 1360 (Fed. Cir. 2018)..........................................................................5

*Braemar Manufacturing, LLC v. ScottCare Corp.*,
 816 Fed. App'x. 465 (Fed. Cir. 2020)...............................................................13

*CardioNet, LLC v. InfoBionic, Inc.*,
 No. 20-2123, 2021 WL 5024388 (Fed. Cir. 2021) ..............................................12

*CardioNet, LLC v. InfoBionic, Inc.*,
 816 F. App'x 471 (Fed. Cir. 2020) ...................................................................12

*CardioNet, LLC v. InfoBionic, Inc.*,
 955 F.3d 1358 (Fed. Cir. 2020)........................................................................11

*ChargePoint, Inc. v. SemaConnect, Inc.*,
 920 F.3d 759 (Fed. Cir. 2019)..........................................................................15

*Cleveland Clinic Foundation v. True Health Diagnostics LLC*,
 859 F.3d 1352 (Fed. Cir. 2017).........................................................................10

*Core Wireless Licensing S.A.R.L. v. Apple Inc.*,
 No. 6:14-CV-752-JRG-JDL, 2015 WL 4910427 (E.D. Tex. Aug. 13, 2015) .................20, 21

*In re Cray Inc.*,
 871 F.3d 1355 (Fed. Cir. 2017)................................................................. *passim*

*Customedia Technologies, LLC v. Dish Network Corp.*,
 951 F.3d 1359 (Fed. Cir. 2020)........................................................................18

*Electric Power Group, LLC v. Alstom S.A.*,
    830 F.3d 1350 (Fed. Cir. 2016) ................................................................... *passim*

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
    839 F.3d 1089 (Fed. Cir. 2016) ............................................................... 11, 13

*In re Genentech, Inc.*,
    566 F.3d 1338 (Fed. Cir. 2009) .......................................................................7

*In re Google LLC*,
    949 F.3d 1338 (Fed. Cir. 2020) .......................................................................6

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
    792 F.3d 1363 (Fed. Cir. 2015) .....................................................................18

*Intellectual Ventures I LLC v. J. Crew Group, Inc.*,
    No. 6:16-CV-196-JRG, 2016 WL 4591794 (E.D. Tex. Aug. 24, 2016) ...............................17

*In re Killian*,
    45 F.4th 1373 (Fed. Cir. 2022) ......................................................................11

*McRO, Inc. v. Bandai Namco Games America Inc.*,
    837 F.3d 1299 (Fed. Cir. 2016) ...............................................................11, 17

*Memory Integrity, LLC v. Intel Corp.*,
    No. 13-1804-GMS, 2015 WL 632026 (D. Del. Feb. 13, 2015) .........................................7

*Miller Mendel, Inc. v. City of Anna, Texas*,
    598 F.Supp.3d 486 (E.D. Tex. 2022) ...............................................................18

*Network Architecture Innovations LLC v. CC Network Inc.*,
    No. 2:16-CV-00914-JRG, 2017 WL 1398276 (E.D. Tex. Apr. 18, 2017) ...............................10

*NorthStar Systems LLC v. Volkswagen AG*,
    No. 2:22-CV-00486-JRG, 2023 WL 5723648 (E.D. Tex. Sept. 5, 2023) ..............................20

*Odom v. Microsoft Corp.*,
    596 F. Supp. 2d 995 (E.D. Tex. 2009) ..............................................................7

*Parker v. Flook*,
    437 U.S. 584 (1978) ................................................................................16

*Philips North America LLC v. Fitbit LLC*,
    626 F.Supp.3d 292 (D. Mass. 2022) ................................................................13

*Ruby Sands LLC v. American National Bank of Texas*,
    No. 2:15-cv-1955, 2016 WL 3542430 (E.D. Tex. June 28, 2016) .................................19, 20

*Simio, LLC v. FlexSim Software Products, Inc.*,
    983 F.3d 1353 (Fed. Cir. 2020)..................................................................................15

*TC Heartland LLC v. Kraft Foods Group Brands LLC*,
    581 U.S. 258 (2017)......................................................................................................6

*Trinity Info Media, LLC v. Covalent, Inc.*,
    72 F.4th 1355 (Fed. Cir. 2023) ...................................................................................10

*Universal Secure Registry LLC v. Apple Inc.*,
    10 F.4th 1342 (Fed. Cir. 2021) ...................................................................................14

*Valeant Pharmaceuticals North America LLC v. Mylan Pharmaceuticals Inc.*,
    978 F.3d 1374 (Fed. Cir. 2020)....................................................................................6

*Van De Vliert v. Tam International, Inc.*,
    2015 WL 6745811 (E.D. Tex. Oct. 30, 2015) .............................................................19

*Westech Aerosol Corp. v. 3M Co.*,
    927 F.3d 1378 (Fed. Cir. 2019)..................................................................................8, 9

*In re ZTE (USA) Inc.*,
    890 F.3d 1008 (Fed. Cir. 2018)............................................................................1, 6, 7

**Docketed Cases**

*Mobile Health Innovative Solutions, LLC v. Samsung Electronics Co. Ltd.*,
    No. 24-cv-00106 (E.D. Tex. Feb. 16, 2024) ................................................................9

*Mobile Health Innovative Solutions, LLC v. Zepp Health Corp.*,
    No. 24-cv-01030 (C.D. Cal. Feb. 6, 2024) ..................................................................9

**Statutes**

28 U.S.C. § 1391...................................................................................................................6

28 U.S.C. § 1400(b) .................................................................................................... *passim*

28 U.S.C. § 1406(a) ..............................................................................................................8

35 U.S.C. § 101............................................................................................................ *passim*

**Federal Rules**

Fed. R. Civ. P. 12(b) .........................................................................................................1, 2

## I.     INTRODUCTION

The scant eight-page complaint filed by Plaintiff Mobile Health Innovative Solutions, LLC—a company that did not exist until six months ago and does not appear to conduct any business other than suing smartwatch manufacturers—is deficient on its face and should be dismissed for three independent reasons.

*First*, the complaint should be dismissed under FRCP 12(b)(3) because it does not establish that venue is proper in the Eastern District of Texas.  The relevant statute requires Mobile Health to show that Apple "has a regular and established place of business" in this District.  28 U.S.C. § 1400(b).  The only two venue allegations in the complaint allege that "Defendant is a company that has offices in this District" and that "[v]enue is proper as Apple files lawsuits in this District on a regular basis, including against competitor Ericsson."  Dkt. 1 [Compl.] ¶¶ 2, 8.  Those allegations are plainly insufficient for Mobile Health to meet its burden under Section 1400(b) based on the factors laid out by the Federal Circuit in cases like *In re Cray Inc.*, 871 F.3d 1355, 1363-64 (Fed. Cir. 2017), and *In re ZTE (USA) Inc.*, 890 F.3d 1008, 1013-15 (Fed. Cir. 2018).  Mobile Health has failed to show that Apple has a "regular and established place of business" in the District that is "the place of the defendant," as Apple has no offices or Apple stores in the District.

*Second*, the complaint should be dismissed under FRCP 12(b)(6) for failure to state a claim because the only asserted patent is invalid under 35 U.S.C. § 101.  Specifically, U.S. Patent No. 11,468,984 ("'984 patent") claims nothing more than the basic idea of gathering and analyzing vital signs to display an individual's stress level, which fails the test for patent eligibility under *Alice*.  Nothing in the '984 patent transforms this abstract idea into an inventive concept; the patent simply claims the application of this abstract concept using conventional and generic technology.

*Third*, the complaint should also be dismissed under FRCP 12(b)(6) for failure to state a claim of infringement.  Far from pleading sufficient facts to allege a claim for direct infringement, Mobile Health's complaint and accompanying claim charts show that the "direct infringement" allegation in the complaint is implausible because the accused Apple product is admittedly not manufactured or sold with one of the accused components.  The complaint also fails to state a claim for indirect infringement as it fails to allege specific intent necessary for induced infringement or the requisite knowledge and no substantial non-infringing use for contributory infringement.

## II.     STATEMENT OF ISSUES TO BE DECIDED BY THE COURT

1.     Whether this Court should dismiss this action under FRCP 12(b)(3)—or, at a minimum, transfer this action to the Northern District of California—because Mobile Health has not established that venue is proper in the Eastern District of Texas under 28 U.S.C. § 1400(b).

2.     Whether this Court should dismiss this action under FRCP 12(b)(6) because Mobile Health has failed to state a viable claim because the sole asserted patent is invalid under 35 U.S.C. § 101.

3.     Whether this Court should dismiss this action under FRCP 12(b)(6) because Mobile Health has failed to allege a viable infringement claim.

## III.    BACKGROUND

### A.     The Parties

Defendant Apple Inc. is a corporation organized under the laws of the State of California. *See* Apple Inc. 2023 SEC Form 10-K.[1]  "Apple[] [is] headquartered in Cupertino, California," *In*

---

[1] *Available at* http://tinyurl.com/pv9kuyyj (last visited Mar. 18, 2024).

*re Apple, Inc.*, 581 F. App'x 886, 887 (Fed. Cir. 2014), which is in the Northern District of California.  Apple manufactures and sells a wide range of consumer products, including iPhone, iPad, and—as relevant here—Apple Watch.  Dkt. 1 [Compl.] ¶ 25.  Apple sells these products through its website, directly to consumers in Apple Stores, and through retailers and distributors. The last Apple Store in the Eastern District of Texas closed five years ago.  *See* Davis, *Apple Shuts Stores In EDTX, But Will Other Cos. Follow?*, Law360 (Feb. 25, 2019).[2]

According to the complaint, Mobile Health "is a Wyoming company having its principal place of business in Cheyenne, Wyoming."  Dkt. 1 [Compl.] ¶ 1.  Public records reveal that Mobile Health was formed in Wyoming on October 11, 2023.  *See* Wyoming Secretary of State Business Center: Mobile Health Innovative Solutions, LLC.[3]

The sole asserted patent—U.S. Patent No. 11,468,984 ("'984 patent")—was originally assigned to Soma Analytics UG.  Dkt. 1-2 ['984 patent] at cover.  Soma Analytics and three of the patent's four named inventors are located in Germany, and the fourth named inventor is located in London, England.  *Id.*  Since the patent issued on October 11, 2022, its ownership has been transferred at least four times before finally landing with Mobile Health on October 12, 2023— *i.e.*, the day after Mobile Health was formed.  *See* Patent Center Assignments for U.S. Patent No. 11,468,984.[4]  Mobile Health does not appear to (1) own any other patents, (2) sell any products, or (3) conduct any business other than suing smartwatch manufacturers.  *See, e.g.*, Patent Assignment Search for Assignee Name Mobile Health Innovative, USPTO.[5]

### B.      The Technology

The '984 patent is entitled "Device, Method and Application for Establishing a Current

---

[2] *Available at* https://tinyurl.com/2dybeke5 (last visited Mar. 18, 2024).

[3] *Available at* http://tinyurl.com/5yzr2wfc (last visited Mar. 18, 2024).

[4] *Available at* http://tinyurl.com/3ywm9jnj (last visited Mar. 18, 2024).

[5] *Available at* http://tinyurl.com/35vss8bp (last visited Mar. 18, 2024).

Load Level," and states that it relates to "a device, a method, a computer program product and an application for establishing a current load level of a user."  Dkt. 1-2 ['984 patent] at cover, Abstract.  According to the patent, the claimed "invention relates to an apparatus for ascertaining a current stress level for a user … , to a method for ascertaining a current stress level, to a computer program product[,] and to an application for a mobile terminal."  *Id.* at 1:11-15.

The patent acknowledges that much of what is claimed in the invention existed in the prior art—*e.g.*, "mobile terminals" with integrated sensors and a plurality of applications, *id.* at 1:25-36, "special devices for sensor-based measurement … [used to] determine a current stress level from the measured values," *id.* at 1:53-60, and "methods based on questionnaire data … help to show the alteration in a stress level over time," *id.* at 1:61-2:3.  The "object of the invention" is to purportedly aggregate these prior innovations into a more convenient form—*i.e.*, to "provide a user with an inexpensive and non-time-consuming solution for determining a current stress level" and "dispense[] with additional apparatuses, particularly sensors, that the user needs to fix or wear directly on his body."  *Id.* at 7:14-24; *id.* at 2:41-48.

Mobile Health's complaint treats independent claim 1 of the asserted patent as "exemplary."  *See* Dkt. 1 [Compl.] ¶ 30.  That claim describes a device "for calculating a current load level of a user" by performing the following steps:

(1) "calculating biometric data about the user, at least from the at least one signal data produced by said at least one sensor, and from use data of said plurality of available applications used by the user,"

(2) dividing the biometric data "into a plurality of categories,"

(3) ascertaining "category-specific load levels … by means of an arithmetic mean or a weighted mean of features relating to the biometric data pertaining to each category in the

plurality of categories,"

(4) "determining the current load level of the user from the biometric data,"

(5) "calculating the plurality of artificial neural networks in parallel," and

(6) displaying "the determined current load level of the user … to the user via the mobile end unit in the form of a consolidated load level obtained from a combination of category-specific load levels by the evaluation unit forming the arithmetic mean or weighed mean of the category-specific load levels."

Dkt. 1-2 ['984 patent] at 22:59-23:39.[6]  In short, claim 1 describes gathering biometric data (point 1 above), analyzing that data (points 2-5), and displaying that data (point 6).

Claim 1 does not rely on any novel component or part.  Rather, it vaguely-describes generic computer parts and applications used in conventional ways to perform the claimed functions, including "a mobile end unit," "at least one signal data generating sensor," "a plurality of available applications," "an evaluation unit provided in the mobile end unit or a central server," "a plurality of processors," and "at least one graphics card with at least one graphics card processor."  *Id.*  It likewise does not identify any novel means to analyze the data, relying instead on basic mathematical concepts of  "an arithmetic mean or a weighted mean."  *Id.*

### C.    The Complaint

Mobile Health's eight-page complaint alleges that "Apple Smartwatches" infringe the '984 patent but provides very few factual allegations supporting that conclusion.  Dkt. 1 [Compl.] ¶ 25; Dkt. 1-3 [Claim Chart].  The complaint's venue allegations are similarly sparse; they allege only Apple "is a company that has offices in this District" and that "[v]enue is proper as Apple files

---

[6] The Federal Circuit has held that "[c]ourts may treat a claim as representative … if the patentee does not present any meaningful argument for the distinctive significance of any claim limitations not found in the representative claim[.]"  *Berkheimer v. HP Inc.*, 881 F.3d 1360, 1365 (Fed. Cir. 2018).

lawsuits in this District on a regular basis, including against competitor Ericsson."  Dkt. 1 [Compl.] ¶¶ 2, 8.  The complaint does not recite the relevant statute under 28 U.S.C. § 1400(b) or provide any venue allegations under that statute.

## IV.    ARGUMENT

### A.    The Court Should Dismiss This Suit Because Venue Is Not Proper In The Eastern District Of Texas.

"In 2017, the Supreme Court dramatically changed the venue landscape in patent cases" by holding "that the general venue provision in 28 U.S.C. § 1391 … does not modify … the more specific venue statute applicable to patent cases."  *Valeant Pharms. N. Am. LLC v. Mylan Pharms. Inc.*, 978 F.3d 1374, 1375 (Fed. Cir. 2020) (citing *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 581 U.S. 258 (2017)).  The Supreme Court recognized instead that "[Congress] placed patent infringement cases in a class by themselves, outside the scope of general venue legislation."  *ZTE*, 890 F.3d at 1012.  In other words, the patent venue statute—28 U.S.C. § 1400(b)—is both "intended to be restrictive of venue in patent cases compared with the broad general venue provision," *id.* at 1014, and to serve as "the exclusive provision controlling venue in patent infringement proceedings," *Cray*, 871 F.3d at 1360.  The Supreme Court has accordingly "cautioned against a broad reading of the venue statute."  *In re Google LLC*, 949 F.3d 1338, 1346-47 (Fed. Cir. 2020) (collecting case law).

Section 1400(b) provides that venue is proper in only two situations: (1) where the defendant "resides" in the judicial district or (2) where the defendant has a "regular and established place of business in the district."  There can be no dispute that Apple does not "reside" in the Eastern District of Texas.  As the Supreme Court has explained, "a domestic corporation 'resides' only in its State of incorporation for purposes of the patent venue statute."  *TC Heartland*, 581

U.S. at 262.  Here, as noted above, it is matter of public record that Apple is incorporated in California.  *See supra* pp. 2-3.

Because Apple does not "reside" in Texas, Mobile Health can establish venue only by showing that Apple has a "regular and established place of business in the district."  28 U.S.C. § 1400(b); *see also ZTE*, 890 F.3d at 1013-14 (patentee "bears the burden of establishing proper venue").  The Federal Circuit has explained that there are "three general requirements relevant to the inquiry" of whether a defendant has a "regular and established place of business" in a venue: "(1) there must be a physical place in the district; (2) it must be a regular and established place of business; and (3) it must be the place of the defendant."  *Cray*, 871 F.3d at 1360.

Mobile Health's complaint does not even attempt to meet its burden under the test set forth in *Cray* and its progeny.  While the complaint focuses on one past litigation in this District, that says nothing about the dispositive venue question of whether Apple has a "regular and established place of business" here.  Indeed, the existence of prior unrelated litigation has been held not to be relevant when analyzing whether transfer of venue is proper.  *See In re Genentech, Inc.*, 566 F.3d 1338, 1346 (Fed. Cir. 2009) (finding "court clearly erred in finding … prior suit weighed against transfer" where there was no indication the prior suit "involved the same parties, witnesses, evidence, and facts"); *see also Memory Integrity, LLC v. Intel Corp.*, 2015 WL 632026, at *3 (D. Del. Feb. 13, 2015) ("[T]hat Intel initiated unrelated cases in the District of Delaware is irrelevant to the transfer analysis in this case."); *Odom v. Microsoft Corp.*, 596 F. Supp. 2d 995, 1002 n.5 (E.D. Tex. 2009) ("[G]iven the fact specific nature of venue transfer analysis, it is unlikely that Microsoft's prior litigation in this District would be highly relevant to the analysis in this case.").  It cannot be the case that prior litigation is enough to satisfy the bright-line *Cray* standard that evaluates whether venue is proper at all when it does not play any role in the Section 1404 analysis

that evaluates whether venue should be transferred for the convenience of the parties and witnesses in the interest of justice.[7]

The closest the complaint comes to addressing the *Cray* test is its allegation that Apple "has offices in this District." Dkt. 1 [Compl.] ¶ 2. That is incorrect as a factual matter—Apple has no offices in the Eastern District of Texas. The "offices" allegation is also insufficient even under the deferential standard of review applied at the complaint stage. It is Mobile Health's "burden to plead *specific facts* showing that the defendant has a regular and established place of business physically located in the judicial district." *Westech Aerosol Corp. v. 3M Co.*, 927 F.3d 1378, 1382 (Fed. Cir. 2019) (emphasis added), and a vague assertion that "offices" exist cannot be enough to make that showing without rendering the three-factor test laid out by *Cray* essentially meaningless. To take just one example, the complaint does not include any factual allegations to attempt to identify "a regular and established place of business" in this District that would meet the "place of the defendant" requirement—*e.g.*, by establishing that Apple "owns or leases [a] place" or "exercises other attributes of possession or control over [a] place" in the Eastern District of Texas. *Cray*, 871 F.3d at 1363.

The proper remedy for Mobile Health's failure to file this case in a proper venue is dismissal. While this Court retains the authority to transfer this suit to "any district or division in which it could have been brought" instead of dismissing it outright if transfer is "in the interest of justice," *see* 28 U.S.C. § 1406(a), this is not a case where Mobile Health made an understandable mistake as to the propriety of bringing suit in this District. To the contrary, the complaint makes no serious effort to show this case has any connection to the Eastern District of Texas, much less

---

[7] Mobile Health's allegation that "Apple files lawsuits in this District on a regular basis," Dkt. 1 [Compl.] ¶ 8, is also incorrect. Apple has filed a single case in this District in the last decade.

meet its burden to establish venue under the three factors identified by the Federal Circuit. *See Westech Aerosol Corp.*, 927 F.3d at 1382-83 (affirming dismissal for improper venue where plaintiff "disregard[ed] controlling law, here *Cray* and *ZTE*" and "failed to plead *any* facts showing [defendant] had a regular and established place of business physically located in the Western District of Washington"). Mobile Health's paper-thin allegations are particularly notable because it has recently sued several other companies over precisely the same patent and *those* complaints at least (1) acknowledge the existence of Section 1400(b) and (2) identify the defendants' specific office addresses located in the District where the suit was filed.[8] Given that Mobile Health is capable of crafting more detailed venue allegations—and apparently made a strategic choice not to do so here—it should not be given a second chance in this case.

At minimum, this Court should transfer this case to the Northern District of California. There can be no dispute that venue would be proper in that judicial district because Apple "resides" in the Northern District of California within the meaning of Section 1400(b). Specifically, it is incorporated in California and headquartered in Cupertino, California, which is located in the Northern District of California. *See, e.g.*, *In re Apple Inc.*, 2021 WL 5291804, at *4 (Fed. Cir. Nov. 15, 2021) (ordering case transferred from Texas to the Northern District of California because, *inter alia*, "the Northern District of California had 'a strong local interest in this matter'"); *In re Apple Inc.*, 2022 WL 1196768, at *2-3 (Fed. Cir. Apr. 22, 2022) (similar). In contrast, public

---

[8] *See, e.g.*, *Mobile Health Innovative Solutions, LLC v. Samsung Electronics Co. Ltd.*, No. 24-cv-00106 (E.D. Tex. Feb. 16, 2024), Dkt. 1 [Compl.] ¶ 10 ("Venue is proper in this judicial district … pursuant to … 1400(b) because [Samsung] … maintain[s] regular and established places of business with offices and/or facilities in this District at least at 6625 Excellence Way, Plano Texas 75023, and 2601 Preston Road, Frisco, Texas 75034."); *see also Mobile Health Innovative Solutions, LLC v. Zepp Health Corp.*, No. 24-cv-01030 (C.D. Cal. Feb. 6, 2024), Dkt. 1 [Compl.] ¶¶ 3, 10 ("Venue is also proper in this district as to Defendants pursuant to … 1400(b)" because "Defendants maintain a regular and established business presence in this District" at "1551 McCarthy Blvd., Ste. 107, Milpitas, California 95305").

information does not suggest that Mobile Health has *any* ties to this District or to Texas more broadly.  *See supra* p. 3.  Accordingly, if this case is not dismissed outright, the most logical location for it to be heard is not in the Eastern District of Texas—a venue that no party has any link to—but in the Northern District of California, where Apple resides.

### B. The Court Should Also Dismiss This Suit Because The '984 Patent Claims Nothing More Than The Unpatentable Abstract Idea Of Determining The Stress Level Of An Individual From Generic Biometric Data.

Section 101 bars patents that claim "[l]aws of nature, natural phenomena, and abstract ideas"—*i.e.*, the "basic tools of scientific and technological work."  *Alice Corp. Pty. Ltd. v. CLS Bank Int'l*, 573 U.S. 208, 216 (2014).  A patent is invalid under Section 101 where (1) it is directed to unpatentable subject matter, such as an abstract idea and (2) it fails to include an inventive concept that transforms the subject matter into a patent-eligible invention.  *Id.* at 217-18.  This determination can be made at any stage of the case, including at the 12(b)(6) stage.  As this Court has explained, "[i]f a patent is ineligible under 35 U.S.C. § 101, then a court may dismiss a complaint asserting infringement of that patent."  *Network Architecture Innovations LLC v. CC Network Inc.*, 2017 WL 1398276, at *3 (E.D. Tex. Apr. 18, 2017); *see also Trinity Info Media, LLC v. Covalent, Inc.*, 72 F.4th 1355, 1360 (Fed. Cir. 2023) (noting "[w]e have repeatedly affirmed § 101 rejections at the motion to dismiss stage"); *Cleveland Clinic Found. v. True Health Diagnostics LLC*, 859 F.3d 1352, 1360 (Fed. Cir. 2017) (collecting cases affirming Section 101 rulings at the 12(b)(6) stage).

#### 1. The '984 Patent Is Directed To An Abstract Idea.

*Alice* Step One considers the "focus of the claims, their character as a whole" to determine whether the claims are directed to unpatentable subject matter.  *Electric Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016).  This inquiry is a "legal question that can be answered based on the intrinsic evidence"—*i.e.*, "the plain claim language [and] statements in the written

description[.]" *CardioNet, LLC v. InfoBionic, Inc.*, 955 F.3d 1358, 1372, 1374 (Fed. Cir. 2020). In determining whether a patent is directed to an abstract idea, courts "look to whether the claims … focus on a specific means or method that improves the relevant technology or are instead directed to a result or effect that itself is the abstract idea and merely invoke generic processes and machinery." *McRO, Inc. v. Bandai Namco Games Am., Inc.*, 837 F.3d 1299, 1314 (Fed. Cir. 2016); *see also FairWarning IP, LLC v. Iatric Sys., Inc.*, 839 F.3d 1089, 1094 (Fed. Cir. 2016) (considering whether "claims merely implement an old practice in a new environment").

Here, exemplary claim 1 from the '984 patent boils down to nothing more than three basic and abstract concepts to achieve a desired result (*i.e.*, determining an individual's "current load level"[9] based on certain biometric data): (1) gathering information (*i.e.*, collecting biometric data from applications on a mobile device), (2) analyzing that information (*i.e.*, determining an individual's stress level by performing basic mathematical calculations using that biometric data), and (3) displaying the results (*i.e.*, displaying the current stress level to the user on the mobile device). *See supra* pp. 3-5; *see also* Dkt. 1 [Compl.] ¶ 15.

There is nothing inventive about the basic notion of gathering and analyzing information, and then displaying the results. *See, e.g.*, *Electric Power*, 830 F.3d at 1353-54 (collecting cases); *In re Killian*, 45 F.4th 1373, 1380 (Fed. Cir. 2022) (explaining that "claims must fail *Alice/Mayo* step one as they are directed to collection of information, comprehending the meaning of that collected information, and indication of the results, all on a generic computer network operating

---

[9] The term "load levels" appears only in the title, abstract and claims of the '984 patent and is not defined in the specification.  Mobile Health's complaint treats  "load level" as synonymous with "stress level."  See Dkt. 1 [Compl.] ¶ 15 ("The '984 Patent teaches devices and methods for establishing a current load or stress level of a user"); Dkt. 1-3 [Claim Chart] at 2 ("Company provides Apple Watches such as the Series 8 Watch, which is compatible with multiple apps such as the Apple Health app and the Stress Monitor app that are used for calculating stress level ('current load level') for the user.").  For purposes of this motion, Apple applies Mobile Health's definition but reserves the right to challenge "load levels" as indefinite at a future point.

in its normal, expected manner").  This is because such steps "can be performed by a human, using observation, evaluation, judgment, [and] opinion, because they involve making determinations and identifications, which are mental tasks humans routinely do."  *Killian*, 45 F.4th at 1379.  For example, for decades, medical industry professionals have gathered information about a patient's vital signs that suggest stress (*e.g.*, heart rate, blood pressure, temperature), analyzed those vital signs, and provided the results to the patient.

Several courts have found claims directed towards similar ideas as those at issue here to be abstract under the same basic *Electric Power* logic.  In *CardioNet, LLC v. InfoBionic, Inc.*, for instance, the Federal Circuit found claims to a comparable device—*i.e.*, one that monitors the electrical activity of a patient's heart rate, analyzes the data for anomalies, transmits the data to a remote monitoring station for storage or analysis, and displays said information—were directed to the abstract idea of collecting, analyzing, and displaying data.  816 F. App'x 471, 475 (Fed. Cir. 2020).  The court rejected the argument that the claims were sufficiently non-abstract to survive Section 101, as they did not recite "specific methods for identifying cardiac events or determining correlation between machine- and human-identified events."  *Id.* at 475.  Like the patent at issue in *CardioNet*, claim 1 of the '984 patent identifies nothing more than a generic device that uses unaltered, conventional sensors and applications to measure, analyze, and display a user's stress level—*i.e.*, a "conventional processes … [that] cannot be said to require anything more than generic data analysis."  *Id.*; *see also CardioNet, LLC v. InfoBionic, Inc.*, 2021 WL 5024388, at *2, *4 (Fed. Cir. 2021) (finding similar claim directed to filtering heartbeat signals abstract because it relied on existing signal data and "supplie[d] no specific way to collect and process the data or to implement the [claimed] filter"); *Braemar Mfg., LLC v. ScottCare Corp.*, 816 Fed. App'x. 465, 470 (Fed. Cir. 2020) (finding patent abstract because the "claims [were] directed to collecting

('receiving a cardiac biological signal'), classifying ('classifying the events'), and filtering data into groups based on identifying characteristics ('determining a measure of merit,' 'comparing the measure of merit'), and transmitting the data for review").

Similarly, in *FairWarning*, the Federal Circuit held that the asserted patent was directed to an abstract idea because it claimed a method for "collect[ing] information regarding accesses of a patient's personal health information, analyz[ing] the information according to one of several rules … to determine if the activity indicates improper access, and provid[ing] notification if it determines that improper access has occurred." 839 F.3d at 1093.  The *FairWarning* patent, too, closely tracks the idea claimed by the '984 patent.  Both patents collect a certain type information (here: biometric data; there: data regarding access to a patient's personal health information), analyze that information (here: to determine a user's stress level; there: to detect improper access), and present that information to a user (here: by displaying the user's stress level; there: by notifying a user if improper access had occurred).  *Compare FairWarning*, 839 F.3d at 1092 (quoting claim 1 of U.S. Patent No. 8,578,500), *with* Dkt. 1-2 ['984 patent] at claim 1.  Likewise, in *Philips North America LLC v. Fitbit LLC*, 626 F.Supp.3d 292, 301 (D. Mass. 2022), the court concluded that a patent that described a way of collecting, analyzing, and displaying exercise-related information (such as the amount of exercise performed and the user's "physiologic status") was directed to an abstract idea, as it did not recite any specific innovation that went beyond the type of generic concept described in *Electric Power*.  *Id.*  As with the '984 patent, the patent at issue in *Fitbit* merely recited a series of steps that involved gathering data (here: collecting biometric data; there: exercise data), analyzing that data (here: through an "evaluation unit"; there: from a server), and showing the results—under *FitBit*'s logic, such a claim is fundamentally abstract because it does not provide any "inventive technology for performing th[e claimed] functions."  *Id.*

Mobile Health may attempt to save its patent by pointing to the fact that it purports to claim a method for determining the user's "load" or "stress" levels and that it relies on the use of "biometric" information.  But as to the former, the patent fails to explain precisely what the "load" or "stress" levels limitation requires beyond the kind of generic measurements that are part of a routine physical.  A patentee cannot survive Section 101 by relying on mere generalities.  *See Universal Secure Registry LLC v. Apple Inc.*, 10 F.4th 1342, 1352, 1354-55 (Fed. Cir. 2021) (patentee must provide "a specific technical solution" rather than rely on generalities).  Moreover, the patent itself acknowledges that the idea of automating the process of measuring "load" or "stress" is not particularly unconventional—"there are differently designed apparatuses and methods that use special devices for sensor-based measurement of specific vital functions and determine a current stress level from measured values" in the prior art.  Dkt. 1-2 ['984 patent] 1:53-56.  As to the latter (the use of biometric information), the patent acknowledges that the type of biometric data it relies on is already collected by sensors that exist in the prior art.  *See* Dkt. 1-2 ['984 patent] at 3:30-34, 3:47-4:21, 7:8-24.  In any event, the Federal Circuit has previously held that other patents that involve "the collection of biometric information"—without more—were directed to an abstract idea.  *Universal Secure Registry*, 10 F.4th at 1354.[10]

At the end of the day, though "the claims are couched as systems or articles, [the '984 patent's claims] essentially recite and are directed to collecting, analyzing, and displaying [biometric] data by conventional means."  *See CardioNet*, 816 Fed. App'x at 475; *see also Electric Power*, 830 F.3d at 1351 (holding that "performing real-time performance monitoring of an electric power grid by collecting data from multiple data sources, analyzing the data, and displaying the

---

[10] The same analysis applies to the many other buzzwords used in the claims without being attached to a specific new technique, such as "artificial neural networks" or the various specific categories of biometric data and sensors claimed in dependent claims 5 and 11.  A patentee cannot overcome Section 101 merely by using a thesaurus.

results" is directed to unpatentable abstract idea).   The claim is accordingly directed to an unpatentable abstract idea.

### 2.    *The '984 Patent Does Not Include An Inventive Concept.*

*Alice* Step 2 is a "search for an inventive concept—i.e., an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Alice*, 573 U.S. at 217-18 (internal quotation marks omitted).  Here, the claims of the '984 patent do not recite such an inventive concept.  They simply claim the abstract ideas discussed above and apply those abstract ideas using generic computer parts and basic math.  That the claims purport to improve the efficiency of an abstract process is not sufficient to transform the abstract ideas into an inventive concept.

*First*, Mobile Health cannot rely on any of the abstract ideas discussed above to claim an inventive concept.  *See Simio, LLC v. FlexSim Software Prods., Inc.*, 983 F.3d 1353, 1363 (Fed. Cir. 2020) ("[A] claimed invention's use of the ineligible concept to which it is directed cannot supply the inventive concept[.]").   This is because "transformation into a patent-eligible application requires 'more than simply stat[ing] the [abstract idea] while adding the words 'apply it.'" *ChargePoint, Inc. v. SemaConnect, Inc.*, 920 F.3d 759, 773 (Fed. Cir. 2019) (quoting *Alice*, 573 U.S. at 221); *see also Simio*, 983 F.3d at 1363.   That, however, is precisely what the '984 patent does.  There are two problems the patent contends exist in the art: (1) "the current stress level is determined on the basis of very few biometric data … which means that different categories of biometric data are not combined [and] [t]herefore, the current stress level can be determined less reliably than when a large number of different categories of biometric data are used," Dkt. 1-2 ['984 patent] at 2:4-13; and (2) "sensor-based apparatuses resort to special devices … that capture a specific category of biometric data" (a result that is both costly and a nuisance to the user), *id.* at 2:14-28.  The patent's solution, as exemplified in claim 1, is simply to use a single

generic device with sensors and applications that considers a wider range of generic biometric data.  In other words, "the only possible inventive concept … is the abstract idea [of gathering, analyzing, and displaying] itself."  *ChargePoint*, 920 F.3d at 774-75.

It is similarly insufficient that the '984 patent attempts to limit the abstract ideas of gathering, analyzing, and displaying data to a "particular technological environment"—here, measuring stress level based on biometric data.  *Electric Power*, 830 F.3d at 1354.  If that were sufficient, a patentee could monopolize the Pythagorean Theorem simply by claiming the idea of applying it to the particular context of surveying land.  *See Parker v. Flook*, 437 U.S. 584, 590 (1978).

*Second*, Mobile Health cannot show an inventive concept because no claim element describes anything beyond the use of "conventional, generic technology" nor do they "require a new source or type of information, or new techniques for analyzing it."  *Electric Power*, 830 F.3d at 1355-56.  As the patent's specification explains, "[d]etermination of a plurality of biometric data is firstly facilitated by virtue of mobile terminals, such as smartphones, being equipped with an increasing number of sensors as standard."  Dkt. 1-2 ['984 patent] at 3:35-39.  And while the claims make reference to a "further application," that term appears to reference a purely generic application—*i.e.*, one that "can be obtained via … an online shop integrated in the operating system of the mobile terminal," *id.* at 3:6-11, and that "interacts with other components … arranged in the mobile terminal," *id.* at 2:55-58.[11]  Finally, the claims reference an "evaluation unit," but again this "unit" appears wholly generic—it can exist on the application or a server.  *Id.* at 4:49-54.

---

[11] Nor does the "further application" appear to perform any particularly unconventional function.  Rather, it determines biometric data from "sensors integrated in the mobile terminal," "use data of other applications installed on the mobile terminal," or via user questionnaires.  Dkt. 1-2 ['984 patent] at 3:30-34, 4:45-58.  These are all steps that could be taken by nearly any application on a smart phone and do not entail an inventive algorithm.

This unit is not described as performing any function more specific than "ascertain[ing] a current stress level for the user," *id.* at 5:42-45, by using basic math to analyze the gathered biometric data such as an "arithmetic … or weighted mean," *id.* at 11:39-42.  *See also, e.g.*, *id.* at 12:23-45 (describing a "data analyzer [that] analyzes the conditioned signal data … by means of a statistical regression model").[12]  Application of mathematical principles without more cannot constitute an inventive contribution or transform otherwise non-patentable subject matter into patentable subject matter.  *See McRO*, 837 F.3d at 1312 ("[C]laims requiring the use of a specific equation [are] unpatentable…").

In short, the common components described in the patent do not go beyond the ordinary use of generic sensors and applications, or use any unique or inventive algorithm as to how load levels are calculated.  Simply put, "the claims do not recite a new … technique, but rather combine nonspecific, conventional [biometric data collection] techniques"; "[t]here is nothing in the specification suggesting … that the claimed combination of these conventional [biometric data collection] techniques achieve more than the expected sum … provided by each technique." *Universal Secure Registry*, 10 F. 4th at 1355; *Intellectual Ventures I LLC v. J. Crew Grp., Inc.*, 2016 WL 4591794, at *4 (E.D. Tex. Aug. 24, 2016) ("Combining generic data, from generic data stores, across generic networks does not reflect the necessary innovation to salvage [the] underlying abstract idea."); *CardioNet*, 816 Fed. App'x. at 476 (no inventive concept where "claims depend on methods that can be performed on any general-purpose computing device without reciting or requiring any nonconventional components or characteristics").

---

[12] Even the specification's description of terms like "artificial neural networks" does not encompass more than a generic device using normal machine learning processes—*i.e.*, "train[ing] on the basis of available biometric data from a multiplicity of users," Dkt. 1-2 ['984 patent] 6:14-18, to "improve[] the reliability of the method" over time, *id.* at 7:1-7.

*Finally*, while the "object of the invention" is to "provide a user with an inexpensive and non-time-consuming solution for determining a current stress level" and to "dispense[] with additional apparatuses … that the user needs to fix or wear directly on his body," Dkt. 1-2 ['984 patent] at 7:14-24, 2:41-48, the Federal Circuit has consistently held that simply improving the efficiency of an abstract process is not sufficient to survive 101.  *See, e.g.*, *Customedia Techs., LLC v. Dish Network Corp.*, 951 F.3d 1359, 1364 (Fed. Cir. 2020) ("[C]laiming the improved speed or efficiency inherent with applying the abstract idea on a computer [is] insufficient to render the claims patent eligible as an improvement to computer functionality." (cleaned up)); *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1367, 1370 (Fed. Cir. 2015) ("[O]ur precedent is clear that merely adding computer functionality to increase the speed or efficiency of the process does not confer patent eligibility on an otherwise abstract idea."); *see also Miller Mendel, Inc. v. City of Anna, Texas*, 598 F.Supp.3d 486, 498 (E.D. Tex. 2022) (explaining that "the alleged efficiency of the method through computerization" fails to establish an inventive concept because "the problem being solved by the use of computer technology does not solve a specific computing problem").  Any other result would be inconsistent with the result in *Alice*, which holds that a patentee cannot avoid Section 101 by implementing an abstract idea on a computer, 573 U.S. at 223-224—almost any implementation of an abstract idea on a computer would generally result in increased speed and efficiency.

In short, Mobile Health's complaint should be dismissed because "[t]hough lengthy and numerous, the ['984 patent's] claims do not go beyond requiring the collection, analysis, and display of available information in a particular field [and] stat[e] those functions in general terms." *Electric Power*, 830 F.3d at 1351.

**C.** **The Court Should Also Dismiss This Suit Because The Complaint Fails To State A Claim For Direct Or Indirect Infringement.**

The Court should also dismiss this case because the complaint fails to state a claim for either direct or indirect infringement. "[T]o state a claim for direct infringement, a plaintiff must explicitly plead facts to plausibly support the assertion that a defendant 'without authority makes, uses, offers to sell, or sells any patented invention during the term of the patent.'" *Ruby Sands LLC v. Am. Nat'l. Bank of Texas*, 2016 WL 3542430, at *2 (E.D. Tex. June 28, 2016). Despite alleging that Apple "has infringed and continues to infringe one or more claims, including at least Claim 1, of the '984 patent by manufacturing, using, importing, selling, offering for sale, and/or providing (as identified in the Claim Charts attached hereto as Exhibits B) products … which infringe at least Claim 1 of the '984 Patent," Dkt. 1 [Compl.] ¶ 25, the complaint does not allege sufficient facts to plausibly support the assertion of direct infringement by Apple. To the contrary, the claim chart attached to the complaint shows that the direct infringement allegation is implausible as the accused Apple product is not manufactured, imported, sold, offered for sale, or provided with one of the accused components. In particular, the claim chart attached to the complaint relies on a third-party "Stress Monitor" application to plead infringement. *See, e.g.*, Dkt. 1-3 [Claim Chart] at 2 ("Company provides Apple Watches such as the Series 8 Watch, which is compatible with multiple apps such as the Apple Health app and the Stress Monitor app that are used for calculating stress level ('current load level') for the user."). But Apple Watches as sold do not include the Stress Monitor app. Rather, as shown in the claim charts, the application is provided by a company called "ActiveAce." *Id.* at 4. In other words, Apple Watch is at most only a part of Mobile Health's infringement allegations and therefore cannot be directly infringing. *See Van De Vliert v. Tam Int'l., Inc.*, 2015 WL 6745811, at *2 (E.D. Tex. Oct. 30, 2015) (dismissing complaint where "[o]n the face of the complaint, the Court [was] unable to determine whether a

"Swellable Packer" comprises the entire claimed system or is simply a component of the allegedly infringing system").

Mobile Health's complaint also fails to state a claim for indirect infringement.  "To state a claim for induced infringement, a plaintiff must allege facts to plausibly support the assertion that the defendant specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement." *Ruby Sands*, 2016 WL 3542430, at *3.  And "[t]o state a claim for contributory infringement, a plaintiff must allege facts to plausibly support the assertion that there was (1) an act of direct infringement; (2) that the defendant knew that the combination for which its components were especially made was both patented and infringed; and (3) the components have no substantial non-infringing use." *Id.*  Here, although the complaint alleges that Apple "has infringed and continues to infringe … through acts of contributory infringement or inducement," Dkt. 1 [Compl.] ¶ 25, the complaint alleges no facts to plausibly support claims for induced or contributory infringement.  As an initial matter, the complaint does not identify any acts of direct infringement.  Moreover, with respect to induced infringement, the complaint alleges no facts to plausibly support the assertion that Apple specifically intended a third party to directly infringe the plaintiff's patent and knew that the third party's acts constituted infringement.  *See NorthStar Sys. LLC v. Volkswagen AG*, 2023 WL 5723648, at *3 (E.D. Tex. Sept. 5, 2023) (plaintiff "has inadequately pled indirect infringement" where plaintiff "has not sufficiently pled that [defendant] has caused or encouraged infringing activity"); *Core Wireless Licensing S.A.R.L. v. Apple Inc.*, 2015 WL 4910427, at *1, *4 (E.D. Tex. Aug. 13, 2015) (adopting report and recommendation and dismissing induced infringement claims where complaint failed to allege any facts "that Apple had the specific intent to induce its customer's actions, and knowledge that those actions amounted to infringement").  With respect to contributory

infringement, the complaint does not allege that Apple "knew that the combination for which its components were especially made was both patented and infringed" or that "the components have 'no substantial non-infringing uses.'"  *See id.*, at *1, *5 (adopting report and recommendation and dismissing contributory infringement claims where complaint "is devoid of any facts from which the Court can plausibly infer that any components of the products being sold have 'no substantial non-infringing uses'").

Mobile Health's complaint should therefore be dismissed for failing to plead infringement.

## V.     CONCLUSION

For the foregoing reasons, Apple's motion to dismiss should be granted.

DATED: March 18, 2024                                    Respectfully submitted,


                                                        By: */s/ Sarah R. Frazier*

                                                        Sarah R. Frazier (*pro hac vice*)
                                                        Sarah B. Petty (*pro hac vice*)
                                                        Courtney C. Merrill (*pro hac vice*)
                                                        sarah.frazier@wilmerhale.com
                                                        sarah.petty@wilmerhale.com
                                                        courtney.merrill@wilmerhale.com
                                                        WILMER CUTLER PICKERING
                                                           HALE AND DORR LLP
                                                        60 State Street
                                                        Boston, MA 02109
                                                        Telephone: (617) 526-6000
                                                        Facsimile: (617) 526-5000


                                                        Mark D. Selwyn (*pro hac vice*)
                                                        Joseph F. Haag (*pro hac vice*)
                                                        Thomas G. Sprankling (*pro hac vice*)
                                                        Jungyeon Kim (*pro hac vice*)
                                                        mark.selwyn@wilmerhale.com
                                                        joseph.haag@wilmerhale.com
                                                        thomas.sprankling@wilmerhale.com
                                                        john.kim@wilmerhale.com
                                                        WILMER CUTLER PICKERING
                                                           HALE AND DORR LLP

2600 El Camino Real, Suite 400
Palo Alto, CA  94306
Telephone: (650) 858-6000
Facsimile: (650) 858-6100

Steven Horn (*pro hac vice*)
steven.horn@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
2100 Pennsylvania Avenue NW
Washington, DC 20037
Telephone: (202) 663-6000
Facsimile: (202) 663-6363

Vikram Iyer (*pro hac vice*)
vikram.iyer@wilmerhale.com
WILMER CUTLER PICKERING
    HALE AND DORR LLP
350 South Grand Avenue, Suite 2400
Los Angeles, CA 90071
Telephone: (213) 443-5300
Facsimile: (213) 443-5400

Melissa R. Smith
State Bar No. 24001351
melissa@gillamsmithlaw.com
GILLAM & SMITH, LLP
303 South Washington Avenue
Marshall, TX 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257

*Attorneys for Defendant Apple Inc.*

## <u>CERTIFICATE OF COMPLIANCE WITH THE COURT'S</u>
## <u>35 U.S.C. § 101 MOTION PRACTICE ORDER</u>

_____   The parties **agree** that prior claim construction is not needed to inform the Court's analysis as to patentability.

___X___   The parties **disagree** on whether prior claim construction is not needed to inform the Court's analysis as to patentability.

By: _/s/ Sarah R. Frazier_____
Sarah R. Frazier

23

## <u>CERTIFICATE OF SERVICE</u>

I certify that the foregoing document was filed electronically and served on all counsel of record by the Court's CM/ECF system on March 18, 2024.


By: *<u>/s/ Melissa R. Smith</u>*
Melissa R. Smith